KNOLL, J.,
dissents.
| TThere are several important aspects of this parental relocation case that I feel the majority opinion either inappropriately glossed over as unimportant or failed to consider, which prompts me to dissent with all due respect.
As an initial matter, I disagree with the majority’s characterization of the burden of proof which the relocating parent must meet. La.Rev.Stat. § 9:355.13 states that the “relocating parent has the burden of proof that the proposed relocation is made in good faith and is in the best interest of the child.” Although we examined this statute in Curole v. Curole, 02-1891 (La.10/15/02), 828 So.2d 1094, we did not address whether the moving parent’s burden was simple preponderance of the evidence or a heightened standard such as clear and convincing evidence. The majority opinion, however, claims that the relocating parent bears a “very heavy burden” to prove that relocation is in the best interest of the child. I disagree. Preponderance of the evidence is the usual standard in non-criminal cases, and neither La.Rev.Stat. § 9:355.13 nor this Court’s prior jurisprudence support imposing a stricter standard for a motion to relocate.
I also disagree with the majority’s treatment of the primary question before this Court, that is, whether a trial court judgment must explicitly address each one of the twelve factors set forth in La.Rev.Stat. §- 9:355.12. I find the majority opinion creates ambiguous precedent — although it states a trial court is not required to examine each individual statutory factor set *15 forth in RS 9:355.12, the | ^pinion goes on to discuss each factor one by one. This suggests that, even if the trial court has not explicitly ruled on each factor, a reviewing court must.
Although I do not believe that a trial judge must go down the list of every factor, at the very least the trial court must make sufficient factual findings to allow for appellate review of those factors. Put otherwise, the factors must be applied in each case, even if they are not specifically enumerated. The legislature drafted twelve highly specific factors for a reason, and it must have intended courts to give due consideration to each factor. Here, the trial court failed to make adequate factual findings to support a finding as to each factor. Indeed, the record reflects the court all but ignored some highly relevant factors while giving undue weight to others.
In its oral reasons for judgment, the trial court gave undue weight to the factors favoring Robert and his extended family. The evidence is uncontroverted that the children’s relationship with Vanessa is significantly closer than their relationship with Robert. The children lived with Vanessa the vast majority of the time and stayed with Robert every other weekend, or approximately four days a month. Vanessa was primarily responsible for raising the children during the marriage and remained the principal caretaker after the separation and divorce. Yet, as appropriately noted by the court of appeal, the “trial court did not make any reference to the nature, quality, extent of involvement, and duration of the children’s relationships with Vanessa.”
Moreover, Robert did not take full advantage of the opportunities he did have to spend time with his children. Of the fourteen days a month Robert spends at home, he only takes his children for four days. Vanessa would have been willing to let Robert spend additional time with his children, but he never asked. After moving, Vanessa offered to let the children spend their summers in Thibodaux and to rotate major holidays in Louisiana. This arrangement would have given Robert | ¡¡roughly the same amount of time with his children as he currently spends. Given Robert’s unwillingness to devote equal amounts of time to his children while he lives in Louisiana, I do not believe he should have a veto on them moving to Washington.
The trial court also gave disproportionate consideration to the children’s relationship with their paternal grandmother and aunts. Although relationships with extended family are no doubt important, the primary focus must always be on the children’s relationship with their parents and the children’s best interest. The trial court seemed more concerned with the interests of the extended family than the interests of Vanessa and the children themselves.
Moreover, there are no grounds for favoring Robert’s extended family over Vanessa’s family. The record reflects Vanessa had a good relationship with her sister in Washington, and there is reason to believe the children will form equally beneficial relationships with their mother’s family after the move.[1] The court apparently did not even consider these possible benefits to the children, and instead focused only on the detrimental effect a *16 move would have on Robert’s family in Louisiana.
The trial court also put great emphasis on the fact the children had lived in Louisiana for most of their lives and leaving Lafourche Parish would require changing schools and finding new friends. But this alone cannot be determinative. If it were, no motion for relocation would ever be granted. Neither party suggests the children would be unable to cope with starting at a new school or finding new friends. It appears both children were progressing well socially and in school and were looking forward to moving to Washington.
|4By far the most important factor in this case is the improvement in the children’s standard of living that would result from moving to Washington. Vanessa is struggling to make ends meet. She makes just over $10 an hour as a secretary at Nieholls State University and is understandably concerned that budget cuts to higher education will lead to a long-term freeze in pay and that, eventually, cuts may have to be made. The university has already imposed one unpaid involuntary furlough. Given her meager income and the expenses of raising two boys, she pays her monthly living expenses by relying on student loans. This is obviously not a sustainable financial situation.
By moving to Washington, she would start a new job with an increased salary of $15 an hour, a house to live in rent-free, and free childcare assistance from her sister. In the long term, her mother had tentatively agreed to help her pay a down payment on a new house of her own. This is not an ancillary or minor benefit; it represents a marked increase in the standard of living for both Vanessa and the children. The statute clearly states a court must consider the “current employment and economic circumstances of each parent and whether or not the proposed relocation is necessary to improve the circumstances of the parent seeking relocation of the child.” La.Rev.Stat. § 9:355.12(8). It is beyond dispute that moving to Washington would materially improve Vanessa’s current employment and economic circumstances.
Perhaps most egregiously, the trial court did not consider the root cause of Vanessa’s financial stress — Robert’s ongoing nonpayment of child support. A consent judgment signed by both parties required Robert to pay $1,320 in child support per month.[2] However, within a month of the divorce Robert was already in [¿arrears. In May 2006 he paid $660; half what he owed. From June through October 2006 he did not pay anything at all; as he tells it, Vanessa agreed to “relax” the child support. Robert claims that sometime in the fall of 2006 he convinced Vanessa to accept about $900 a month — the $637.84 which was Vanessa’s share of the mortgage, and $300 in cash. For her part, Vanessa testified she never agreed to accept less money and repeatedly asked him for the full amount.[3] This went on through June 2008, during which time Vanessa applied for government aid to make up for the shortfall. From June 2008 to March 2009 Robert paid the full $1,300. However, in April 2009 Robert again decided he had been paying too much, allegedly because the house note changed, and unilaterally reduced the monthly payments by $130. *17 In May 2009, Vanessa filed a rule to show cause to recover past due payments of $14,900.
Vanessa’s rule on child support was originally set for hearing on June 30, 2009. The hearing, along with the hearing on the motion to relocate, was reset for August 9, 2009. When Robert’s attorney withdrew from the case and new counsel substituted, the hearings were again reset for August 21, 2009. On August 21 the hearing on the motion for relocation ran long and the rule for child support was continued to September 1, 2009.[4] After hearing testimony from the parties, the court awarded Vanessa the full $14,900, plus attorney’s fees and court costs, and ordered that Robert’s wages be garnished effective immediately. In my view, the trial court committed reversible error in not considering this important child support rule first.
La.Rev.Stat. § 9:355.12(A)(9) states a trial court must consider the “extent to which the objecting parent has fulfilled his or her financial obligations to the parent seeking relocation, including child support, spousal support, and community property obligations.” Because the court ruled on the motion to relocate first, it did not have the benefit of the evidence showing Robert’s repeated failure to pay his child support obligations. Although the majority opinion claims the court “had to have considered this factor” in ruling on the motion to relocate, there is no evidence to support that speculation. Indeed, the trial court could not have considered this factor when ruling on the motion to relocate. At that point, all it had before it was Vanessa’s allegations.
Robert’s failure to pay his child support is directly relevant to his fitness as a parent and is highly relevant in any motion to relocate. Financially supporting your children is the first, fundamental obligation of parenthood. Civ.Code art. 227. In my opinion, by failing to meet his bare minimum obligation, Robert effectively lost his right to object when Vanessa sought to move to Washington to improve her financial position — a financial position which was caused in large part by Robert’s failure to pay. Robert did not pay his child support, thereby sending his ex-wife and children into severe financial distress. He should not have veto power over her right to try to escape that predicament. The legislature obviously believes what it calls “deadbeat” parents are a serious problem — serious enough that Robert’s failure to pay is a crime punishable by a fine in the amount of $500 and six months’ imprisonment. La.Rev.Stat. § 14:75.[5] This Court should treat this serious problem with the same gravity.
I therefore respectfully dissent and would affirm the judgment of the court of appeals.

. Although the record on this issue is limited, Andru, the older son, had ongoing communication with his cousins in Washington. An-dru, who was eleven at the time of the hearing, is certainly old enough to express a meaningful opinion as to whether he would like to move to Washington.

. At the time of the judgment Robert's income was $6,708 per month and Vanessa’s was $0 per month. The $1,320 figure is roughly in line with the child support schedule set forth in La.Rev.Stat. § 9:315.19.

. Robert told Vanessa she should be more like his buddy’s ex-wife, who (according to Robert) didn’t make her ex-husband pay.

. The majority opinion states that the trial court "issued each judgment on the same day.” Not so. While it is true that the trial court signed both written judgments on November 3, 2009, the court gave its oral judgment and reasons on the dates of the hearings. There is no question that the court had given its final ruling on the motion for relocation before the rule for child support had been heard.

. Robert’s arrearages were only $100 shy of the $15,000 minimum which would have made him eligible for even harsher criminal punishments.